**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KELSEY MCCORD on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC.<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff KELSEY MCCORD ("Plaintiff") brings this Class Action Complaint against Defendant ABBOTT LABORATORIES, INC. ("Abbott" or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action lawsuit brought by Plaintiff on behalf of all consumers who purchased Abbott's powdered infant formula products, including Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® products, which were manufactured at the Abbott Nutrition facility in Sturgis, Michigan ("Sturgis Facility").

2.      The United States Food and Drug Administration ("FDA"), in conjunction with the Center for Disease Control ("CDC"), announced on February 17, 2022, that it was investigating Defendant's Similac®, Alimentum®, and EleCare® products following several consumers complaints of Cronobacter sakazakii and Salmonella Newport contamination. The FDA's advisory notice alerted consumers to avoid purchasing or using Defendant's Similac®, Alimentum® and

1

EleCare® products, and Abbott initiated a voluntary recall of those products ("First Formula Recall").

3. Abbott later announced that it found evidence of Cronobacter sakazakii at the Sturgis Facility. On February 28, 2022, Abbott recalled Similac PM 60/40 (Lot # 27032K80 (can) / Lot # 27032K800 (case)) ("Second Formula Recall") "after learning of the death of an infant who tested positive for Cronobacter sakazakii and . . . consumed Similac PM 60/40 from this lot."[1]

4. As further explained *infra* ¶ 35, Defendant Abbott knew about the ongoing risk of contamination and related noncompliance issues at its Sturgis Facility, and Abbott should have initiated a product recall and taken other preventative measures in September of 2021. Instead, Defendant waited a full five months before it decided to recall the products, and that decision came *after* the FDA publicly announced that it was investigating Abbott.

5. The consequences were dire. Abbott's failures harmed consumers, sickened infants, and ultimately led to the death of at least two children. Abbott's First Formula Recall and Second Formula Recall (collectively the "Formula Recall") are too little too late.

6. Plaintiff seeks damages and equitable remedies for herself and the putative Class, defined *infra* ¶ 57, economic loss suffered as a result of the Formula Recall and Defendant's negligence, deceptive practices, and related business practices.

## PARTIES

*Defendant*

7. Defendant, ABBOTT LABORATORIES, INC. is a Delaware Corporation with its principal place of business in Abbott Park, Lake County, Illinois and is registered in Illinois as a foreign corporation.

8. At all relevant times, Defendant was, and continues to be, engaged in the manufacture, distribution, marketing, and sale of its powdered infant formulas, including Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® brand products (collectively, the

---

[1] https://www.similacrecall.com/us/en/home.html (last accessed Feb. 28, 2022).

"Contaminated Infant Formulas" or "Products").[2]

9.      Abbott sold Contaminated Infant Formulas throughout the United States, including the State of Illinois and State of Kentucky.

***Plaintiff***

10.      Plaintiff Kelsey McCord is a citizen of Louisville, Kentucky who purchased Defendant's Contaminated Infant Formula at a Walmart store located in Louisville, Kentucky.

11.      At the time of purchase, Plaintiff relied on and reasonably believed that the product was safe for its intended use.

<u>**JURISDICTION AND VENUE**</u>

12.      This Court has personal jurisdiction over Defendant because: (1) its principal place of business is located within this District, (2) it has continuous and systematic ties making it at home in this District, and (3) it purposefully availed itself to the laws of this District by marketing, distributing, and selling Contaminated Infant Formulas at hundreds of retail locations throughout Illinois, including retail locations in this District.

13.      This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.      Venue is proper in this District pursuant 28 U.S.C. § 1391(b)(2) and (3) because a substantial portion of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendant is subject to the Court's personal jurisdiction generally and

---

[2] https://abbottnutrition.com/infant-and-new-mother (last accessed Feb. 28, 2022).

with respect to this action specifically.

## GENERAL ALLEGATIONS

**A. Abbott's Nutrition Products and Powdered Infant Formulas**

15.     Abbott Laboratories is an American multinational medical devices and health care company with its headquarters in Abbott Park, Illinois, United States. Abbott was founded 130 years ago, and its products are currently distributed and sold in over 160 countries.[3] In 2021, Abbott Laboratories gross sales were $43.1 billion USD.[4]

16.     Abbott's nutrition division ("Abbott Nutrition") was created in 1903, and, since that time, Abbott has earned consumer's trust as the number one seller of pediatric nutrition products.[5]

17.     According to the Global Infant Formula Market Report 2021-2025, Abbott is considered one of the most dominant players in the baby formula market, which is expected to be valued at $93 billion by the year 2025.[6]

18.     Abbott, through Abbott Nutrition, was and is engaged in the manufacture, distribution, marketing, and sale of several powdered infant formula brands, including brands that were the subject of the First Formula Recall and Second Formula Recall (Similac®, Similac PM 60/40 ®, Alimentum® and EleCare®).

19.     Abbott's products are marketed, distributed, and sold in a uniform manner throughout the United States, and are available for purchase at thousands of retail locations and

---

[3] https://dam.abbott.com/en-us/abbottcorpnews/pdf/Corporate-Fact-Sheet.pdf (last accessed Mar. 1, 2022).
[4] *Id.*
[5] https://dam.abbott.com/global/documents/pdfs/newsroom/Abbott_FactSheet_Nutrition_2015.pdf (last accessed Mar. 2, 2022).
[6]     https://www.businesswire.com/news/home/20210309005489/en/Global-Infant-Formula-Market-Report-2021-2025-Featuring-Nestle-S.A.-Danone-S.A.-Abbott-Laboratories-Royal-FrieslandCampina-N.V-Reckitt-Benckiser-and-Kraft-Heinz---ResearchAndMarkets.com (last accessed Feb. 28, 2022).

online through Abbott's website and other major retailers such as Walmart, Target, and Amazon.

20.     Consumer trust is a valuable asset to Abbott, which holds itself out as a safe and responsible company that is committed to scientific research and to "nourishing every stage of life"[7]:

> Every day, our team of passionate scientists and experts works hard to discover and develop nutrition products that better life for people of all ages. As a leader in nutrition science, research and development, our goal is to deliver nutrition products and education that meet the changing needs of families across the world.[8]

21.     Abbott, on its website and elsewhere, emphasizes its commitment to developing and manufacturing nutrition products that are safe for infants to consume:

> We make products to help babies and children grow, that work to keep bodies strong, and that support the unique nutritional and therapeutic needs of adults. Nutrition is the foundation to healthy living and here at Abbott Nutrition, we provide resources to help people live their best life.[9]

22.     Despite these and other representations about the safety of its products, Abbott marketed, distributed, and sold Contaminated Infant Formulas throughout the United States, including in the State of Illinois and State of Kentucky.

**B. Specialty Infant Formulas**

23.     In addition to the Similac product line, Abbott manufactures, markets, distributes, and sells several different types of specialty infant formula products.

24.     Abbott advertises that its specialty infant formulas are a safe alternative for infants who suffer from pre-existing health conditions or severe food allergies, and, in doing so, targets an especially at-risk subset of an already vulnerable class of consumers.

---

[7] https://abbottnutrition.com/about-us (last accessed Mar. 3, 2022).
[8] *Id.*
[9] *Id.*

*EleCare Powdered Infant Formula*

25.     EleCare, which was included in the First Product Recall, is advertised as "Hypoallergenic" and safe for infants with gastrointestinal conditions, and severe food allergies.[10] Abbott, through its website and marketing materials states:

> Help your child—help yourself—feel better. Talk to your doctor about EleCare or EleCare Jr. They are amino acid-based, hypoallergenic formulas for infants and children with severe food allergies and various GI disorders.[11]

26.     Abbott's website and the product's front label advertise that EleCare is "#1 Recommended by Pediatric Gastroenterologists" and safe for "Severe Food Allergies and GI Disorders." Abbott also states that the products is "clinically shown to support the growth of exclusively formula-fed infants . . . EleCare helps manage symptoms of severe food allergies and various gastrointestinal (GI) conditions."[12]





If your child has severe food allergies or a gastrointestinal (GI) disorder, mealtime isn't always a comforting occasion.

Help your child — and yourself — feel better. Talk to your doctor about EleCare or EleCare Jr. They are amino acid-based, hypoallergenic formulas for infants and children with severe food allergies and various GI disorders.

*Figure 1 EleCare and EleCare Jr. Products*

---

[10] https://elecare.com/product-information/elecare (last accessed Mar. 3, 2022).
[11] *Id.*
[12] *Id.* (Defendant using Figure 1 for advertising and marketing purposes).

27.     Defendant also advertises and promotes EleCare as safe and effective for "dietary management" of the following:[13]

     a.  "*Short Bowel Syndrome (SBS)* . . . a group of problems affecting individuals who have lost the use of a major part of their small intestine."

     b.  *"Eosinophilic Gastrointestinal Disorders (EGIDs)* . . . chronic digestive system disorders in which certain food proteins trigger an overproduction of eosinophils (white blood cells that help fight certain infections) in different areas of the digestive tract."

     c.  "*Food Protein-Induced Enterocolitis Syndrome (FPIES)* . . . an immune reaction in the gastrointestinal system to one or more specific foods. It's commonly characterized by profuse vomiting and diarrhea."

     d.  "*Severe Food Allergies, Malabsorption, and Other Conditions*"

28.     EleCare costs $46.99 per 14.1 oz cannister. (Sales tax and shipping costs excluded).

***Similac PM 60/40 Powdered Infant Formula***

29.     Similac PM 60/40 was recalled on February 28, 2022, several weeks after Abbott issued its first recall and several months after Abbott knew or should have known about contamination issues at the Sturgis Facility. Abbott's website states:[14]

> **02.28.2022** – UPDATE:  Abbott is voluntarily recalling one lot of Similac PM 60/40 (Lot # 27032K80 (can) / Lot # 27032K800 (case)) manufactured in Sturgis, Michigan. This is in addition to lots of Similac®, Alimentum® and EleCare® powder formula that were voluntarily recalled on Feb. 17. The action comes after learning of the death of an infant who tested positive for *Cronobacter sakazakii* and who we were informed had consumed Similac PM 60/40 from this lot.

30.     Abbott's website and Similac PM 60/40's packaging advertise that the product is

---

[13] https://elecare.com/conditions (last accessed Mar. 3, 2022).
[14] https://www.similacrecall.com/us/en/home.html (last accessed Mar. 3, 2022).

designed "[f]or infants who would benefit from lowered mineral intake, including those with impaired renal function. Calcium-to-phosphorus ratio and content designed to manage serum calcium disorders - both hypercalcemia and hypocalcemia due to hyperphosphatemia."[15]

31.    Similac PM 60/40 is sold by the case, which includes six 14.1-ounce cans, and costs $93.00 (sales tax and shipping costs excluded).[16]



*Figure 2*

***Similac Alimentum Powdered Infant Formula***

32.    Similac Alimentum was included in the First Formula Recall, and Abbott represents that the product "is a nutritionally complete, hypoallergenic formula for infants with food allergies, including colic symptoms due to protein sensitivity. Alimentum starts reducing

---

[15] https://abbottstore.com/infant-and-child/similac/similac-pm-60/similac-pm-60-40-infant-formula-powder-14-1-oz-can-case-of-6-00850.html (Defendant using Figure 2 for advertising and marketing purposes)(last accessed Mar. 3, 2022).
[16] *Id.*

excessive crying due to cow's milk protein sensitivity in most infants within 24 hours."[17]

33.     Similac Alimentum is sold in 12.1-ounce cans and costs $53.99 per can (sales tax and shipping costs excluded).[18]

**C. Sturgis Facility, FDA Investigation, and Subsequent Recalls**

34.     The Minnesota Department of Health investigated a case of an infant who was sickened by Cronobacter sakazakii in September 2021.[19]

35.     Minnesota state health officials "knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Michigan, and shared this information with the FDA and CDC in September."[20]

36.     The FDA received reports of the first illness on September 21, 2021, and the agency notified Abbott Laboratories the following day on September 22, 2022.[21]

37.     "During an FDA inspection of the Sturgis plant in September, the agency issued five citations, including improper maintenance of a building used to produce and package infant formula and inadequate handwashing."[22]

38.     The FDA also found "several positive Cronobacter results" from environmental samples during another inspection of the Sturgis facility, and an FDA review of Abbott's internal documents indicated that Abbott Laboratories previously destroyed infant formulas in connection with the contamination issue.[23] The FDA's deputy commissioner said the agency continues to investigate complaints.

---

[17] Note, the product has been removed from Defendant's webpage. Marketing materials, including statements and representations about the product can still be found on third-party retailer websites. (*See* https://www.walmart.com/ip/Similac-Alimentum-8-Count-Hypoallergenic-Infant-Formula-Food-Allergies-Colic-Starts-Reducing-Excessive-Crying-Within-24-Hours-Corn-Free-Lactose-Free-/206610519 (last accessed Mar. 3, 2022)).

[18] https://www.carewaymedicalsupply.com/product/infant-formula-similac-alimentum-12-1-oz-can-powder/?attribute_pa_uom=ea-1 (last accessed Mar. 3, 2022).

[19] https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226 (last accessed Mar. 3, 2022).

[20] *Id.*

[21] https://www.politico.com/news/2022/02/26/senators-demand-answers-from-abbott-on-infant-formula-recall-00012073?cid=apn (last accessed Mar. 3, 2022).

[22] https://www.msn.com/en-us/health/medical/8-additional-infants-have-been-sickened-by-this-recalled-product/ar-AAUzeCu

[23] *Id.*

39.     Three additional illnesses were reported in the months of November, December, and January, and all four infants consumed powdered infant formula manufactured at Abbott's Sturgis Facility.[24] All four infants were hospitalized, and two infants have died.[25]

40.     On February 17, 2022, the FDA announced that it was launching an investigation into complaints of infant illnesses in relation to products manufactured at Defendant's Sturgis Facility, including Defendant's Similac®, Alimentum® and EleCare® products following several consumers complaints of Cronobacter sakazakii and Salmonella Newport contamination.[26]

41.     The FDA's advisory notice alerted consumers to avoid purchasing or using Defendant's Similac®, Alimentum® and EleCare® products.[27]

42.     After the FDA made its public announcement, Abbott recalled the Similac®, Alimentum®. and EleCare® brand products ("First Formula Recall").[28]

43.     Abbott's First Formula Recall came nearly five months *after* it learned about the first reported illness, potential contamination issues at the Sturgis Facility, and the FDA inspection which indicated that there were serious noncompliance issues at the Sturgis Facility.

44.     In conjunction with the First Formula Recall, Abbott announced that it had found evidence of Cronobacter sakazakii in the non-product contact areas of the Sturgis Facility.[29]

45.     Abbott has not explained why it waited nearly five months to make this announcement or warn consumers about the inherent risk of products manufactured at the Sturgis Facility.

46.     Cronobacter bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine).[30]

---

[24] https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-and-salmonella-complaints-powdered-infant-formula-february-2022
[25] https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html
[26] https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-and-salmonella-complaints-powdered-infant-formula-february-2022
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html

47. Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths, abnormal movements, and even death.[31]

48. Cronobacter infection may also cause bowel damage and may spread through the blood to other parts of the body.[32]

49. On February 25, 2022, Senator Patty Murray of Washington and Senator Bob Casey of Pennsylvania demanded Abbott Nutrition hand over information and documents related to the company's Contaminated Infant Formulas.[33]

50. On February 28, 2022, nearly two weeks after the First Formula Recall, Abbott Laboratories announced that, following reports of a second infant death, it was recalling Similac PM 60/40 powdered formula products ("Second Formula Recall").[34]

51. Additional infant illnesses are continuing to be reported in connection with products that were manufactured at Abbott's Sturgis Facility.[35]

**D. Harm to Consumers**

52. Abbott, through its acts and omissions, violated federal law, state statutes, and common law.

53. Plaintiff and Class members would not have purchased the Contaminated Infant Formula, or any other nutritional products manufactured at the Sturgis Facility if they had known that the products were contaminated with—or at substantial risk of being contaminated with—Cronobacter sakazakii, Salmonella, and/or other harmful bacteria at the time of purchase.

54. Abbott continued distributing and selling the Contaminated Infant Formulas for nearly five months after it had learned about the first infant illness before the First Formula Recall and FDA inspections indicated that the Sturgis Facility was unfit for the safe manufacture of

---

[31] *Id.*
[32] *Id.*
[33] *Id.* at fn. 20.
[34] https://www.similacrecall.com/us/en/home.html (last accessed Mar. 3, 2022).
[35] https://www.10tv.com/article/news/national/lawyer-eight-additional-babies-sickened-by-recalled-formula/101-272f2388-6e18-4231-b20d-fba900d956c0 (last accessed Mar. 4, 2022).

infant formulas.

55.     Abbott should have alerted or otherwise warned consumers that harmful bacteria was discovered at the Sturgis Facility in September 2022, but it concealed this fact for nearly five months. Throughout this time period, Abbott fraudulently misrepresented that the Products were safe for consumption.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**National Class:** During the fullest period allowed by law, all persons in the United States who purchased any of Defendant's Contaminated Infant Formulas for personal use and not for resale within the United States (the "National Class").

**Kentucky State Class:** During the fullest period allowed by law, all persons in the State of Kentucky who purchased any of the Products for personal use and not for resale within the State of Kentucky (the "Kentucky Subclass" or "Kentucky State Class").

**Multi-State Class:** During the fullest period allowed by law, all persons in the State of Kentucky or any state with similar laws[36] who purchased any of the Products for personal use and not for resale within that state (the "Multi-State Subclass").

57.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

58.     The following are excluded from the Classes: (1) any Judge presiding over this

---

[36] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Civ. Code §§ 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Kentucky (Ky. Rev. Stat. §§ 367.110, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), aff'd, 795 F.3d 654 (7th Cir. 2015).

action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

59.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

61.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a.      Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of the Contaminated Infant Formulas;

b.      Whether Defendant is strictly liable for its failure to detect contamination issues, including the Cronobacter sakazakii, Salmonella, and/or other harmful bacteria in the Contaminated Infant Formula;

c.     Whether Defendant breached its express warranties and/or implied warranty of merchantability by selling Contaminated Infant Formula;

d.     Whether Defendant negligently or fraudulently misrepresented the Contaminated Infant Formula to consumers;

e.     Whether Defendant failed to adequately warn Plaintiff and Class Members about the risk of contamination and potential side effects associated with using the Contaminated Infant Formula.

f.     Whether Defendant's acts and omissions violate the state laws of California, Florida, Illinois, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin;

g.     Whether Plaintiff and the Class Members did not receive the benefit of their bargain when they purchased the Defendant's Products;

h.     Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

i.     Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

62.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of Plaintiff and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

63.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because every consumer and/or user of of the Contaminated Infant Formulas was subjected to the same course of negligent conduct, omissions of material fact, misrepresentations, and related conduct giving rise to Plaintiff's legal claims. Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and

14

Plaintiff and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all Class Members sustained monetary and economic injuries as a result of Defendant's actions.

64. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes and Plaintiff's interests do not conflict with the interests of the Class Members that Plaintiff seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

65. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

66. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

67. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Negligence**
***(On Behalf of Plaintiff and the National Class and, alternatively,
the Kentucky State Class)***

68.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

69.     Plaintiff brings this count against Defendant on behalf of members of the National Class. In the alternative, Plaintiff reserve the right to bring these claims on behalf of the Kentucky State Class.

70.     Abbott, by virtue of formulating, designing, manufacturing, promoting, marketing, advertising, packaging, labeling, distributing, testing, and selling infant and pediatric formula, has a duty to exercise reasonable care when engaged in the aforementioned activities and practices. This is particularly true since Abbott knows that infants and children will consume their products, and Abbott purposefully advertises and promotes its products as being safe for this group of consumers.

71.     Abbott had a duty to ensure that its Products were safe for infants to consume, and it also had a duty warn consumers Plaintiffs and members of the National Class that it discovered harmful bacteria, including Cronobacter sakazakii and/or Salmonella, at its Sturgis Facility, putting all of its products at risk of contamination.

72.     Defendant failed to exercise reasonable care and breached its duty to Plaintiff and

members of the Classes by, amongst other things: (1) failing to ensure that the Products were safe for their intended use; (2) failing to prevent contamination at the Sturgis Facility; (3) failing to timely warn consumers that the Products were contaminated with life-threatening bacteria, including Cronobacter sakazakii and/or Salmonella; (4) failing to warn consumers that the Sturgis Facility was contaminated with Cronobacter sakazakii and/or Salmonella; (5) failing to conduct sufficient testing or implement sufficient quality control standards to monitor and detect life-threatening bacteria, including Cronobacter sakazakii and/or Salmonella; (6) waiting nearly five months before issuing the First Formula Recall and continuing to sell Contaminated Infant Formulas throughout this time period; (7) failing to include all of the Contaminated Infant Formulas in the First Formula Recall which necessitated a Second Formula Recall; and (8) placing Products that were defective or unreasonably dangerous into the stream of commerce.

73.     Abbott knew or should have known about the contamination risks and noncompliance issues at its Sturgis Facility. Abbott knew or should have known, that its failure to timely detect harmful contaminates, including Cronobacter sakazakii and Salmonella, would harm Plaintiff and members of the National Class. Abbott negligently and recklessly disregarded theses risks.

74.     Abbott further breached its duty and was negligent in its actions, misrepresentations, and omissions in numerous ways including, but not limited to, the following: (1)  failing to use due care in the formulation, design, development, and manufacture of the Products, to prevent and/or minimize the risk of injury and illness to infants; (2) failing to test the Products properly and thoroughly before releasing them on the market; (3) failing to exercise due care when labeling, advertising, and promoting the Products; and (4) negligently continuing to formulate, design, manufacture, market, distribute, and sell the Products after Defendant knew or should have known of the risks of illness associated with consuming the Products.

75.     Defendant knew or should have known that Plaintiff and members of the Class would foreseeably have to dispose of the Contaminated Infant Formulas.

76.     Defendant knew or should have known that Plaintiff and members of the Class

would foreseeably want to dispose of *any and every* product that was manufactured at the Sturgis facility because those products were subjected to the same contamination risks giving rise the Formula Recalls.

77. Defendant's negligence was the direct, actual, and proximate cause of the foreseeable damages and injuries suffered by Plaintiffs and Class Members.

78. Plaintiffs would not have purchased the Products if they knew that the Sturgis facility was contaminated with Cronobacter sakazakii and/or Salmonella, both of which can cause infections that lead to serious illness and death.

79. Defendant's negligence is ongoing and continuing because Defendant continues to mislead consumers about the defects in Products, which pose an unreasonable risk of serious foreseeable harm.

80. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members have suffered and will continue to suffer, significant damages, loss, and injury in an amount to be determined a trial.

## SECOND CAUSE OF ACTION
### Strict Liability – Products Liability
*(On Behalf of Plaintiff and the National Class and, alternatively,*
*the Kentucky State Class)*

81. Plaintiff brings this count on behalf of herself and the National Class and incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein. In the alternative, Plaintiff reserves the right to bring these claims on behalf of the Kentucky State Class.

82. Abbott was and is engaged in the formulation, design, manufacture, packaging, labeling, distribution, and sale of the Contaminated Infant Formula products.

83. Abbott knew or should have known that its products were contaminated with harmful bacteria, or, at a minimum, that its products were risk of being contaminated with harmful bacteria prior to the products leaving the Sturgis manufacturing facility.

84. The Contaminated Infant Formulas are defective because Defendant failed to detect or prevent the bacterial contamination that is the subject of the Formula Recall. The Contaminated Infant Formulas were defective when they left the Defendant's control, and Defendant concedes that the contamination occurred within its Sturgis manufacturing facility.

85. The Contaminated Infant Formulas are defective, unreasonably dangerous, and unfit for their intended use, rendering them entirely worthless to consumers.

86. Plaintiff and Class Members would not have purchased any products from the Sturgis facility, including the Contaminated Infant Formulas, if they had been aware of the contamination or the risk of contamination.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
***(On Behalf of Plaintiff and the National Class and, alternatively,***
***the Kentucky State Class)***

87. Plaintiff brings this count on behalf of herself and the National Class and incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein. In the alternative, Plaintiff reserve the right to bring these claims on behalf of the Kentucky State Class.

88. Plaintiff conferred benefits on Abbott by purchasing the Products at a premium price, and Abbott has knowledge of its receipt of such benefits.

89. Abbott has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.

90. It is unjust and inequitable for Abbott to retain these sums of money because Abbott: (1) negligently failed to prevent the Cronobacter sakazakii and Salmonella contamination; (2) failed to discover the presence of these and other bacterial contaminants; (3) falsely and misleadingly represented that the Contaminated Infant Formulas were safe for infants to consume; (4) concealed known contamination risks at the Sturgis Facility; and (5) continued to sell Contaminated Infant Formulas for five months instead of initiating a recall in September

2021.

91.     Abbott's misrepresentations have injured Plaintiff and members of the Classes because Plaintiff and members of the Classes would not have purchased (or paid a price premium) for the Products had they known the true facts regarding the Products' contamination risks.

92.     Because it is unjust and inequitable for Abbott to retain non-gratuitous benefits conferred on it by Plaintiff, Class Members, and Subclass Members, Abbott must pay restitution to Plaintiff, Class Members, and Subclass Members, as ordered by the Court.

### FOURTH CAUSE OF ACTION
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
***(On behalf of the National Class)***

93.     Plaintiff brings this count on behalf of the National Class and incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

94.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purposes. 815 ILCS 505/11a.

95.     Abbott Laboratories' conduct, including its representations that the Contaminated Infant Formulas were safe for infants to consume, constitutes a violation of the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

96.     Abbott Laboratories intended that Plaintiff and each of the members of the National Class would rely upon Abbott Laboratories' deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

97.     Abbott Laboratories knew or should have known that its representations of fact concerning the Contaminated Infant Formulas are material and likely to mislead consumers.

98.     Abbott Laboratories' practices, acts, and course of conduct in marketing and

selling the Contaminated Infant Formulas are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the National Class would not have purchased the Contaminated Infant Formulas had they known that it was not safe for infants to consume due to contamination risks identified at the Sturgis facility.

99.     Plaintiff and members of the National Class have been directly and proximately damaged by Abbott Laboratories' actions and unfair and deceptive trade practices.

100.     Plaintiff and members of the National Class have suffered ascertainable loss and actual damages.

101.     Plaintiff and members of the National Class did not receive the benefit of the bargain, and are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

102.     Moreover, Defendant's deceptive practices involving the recalled products were designed, established, and initiated from Defendant's marketing and sales agents located at Defendant's corporate headquarters in Illinois and were designed to be uniformly relied upon by consumers nationwide when they purchased the products thereby implicating the legitimate interest of the State of Illinois in ensuring that entities within its jurisdiction operate in accordance with Illinois law.

103.     Therefore, Illinois has a legitimate interest in applying its law to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while serving Illinois and out-of-state consumers.  Accordingly, Illinois law has significant contacts to the claims asserted by this class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

### FIFTH CAUSE OF ACTION
**Violations of the Kentucky Consumer Protection Act**
**Ky. Rev. Stat. §§ 367.110, et seq.**
***(On Behalf of Plaintiff and the Kentucky State Class)***

104.     Plaintiff brings this count on behalf of herself and the Kentucky State Class and

incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein. This Cause of action is alleged in the alternative to Count IV above.

105. Abbott is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

106. Abbott advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. 367.110(2).

107. Abbott engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170 as described herein.

108. Abbott repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

109. Contrary to these representations, the Products are not safe for use as described on the Product labels or in Abbott's uniform marketing and advertising campaign. Rather, the Products are defective because they suffer from an unreasonable and inherent risk of being contaminated with harmful bacteria, including Cronobacter and/or Salmonella and have caused life-threatening illnesses in infants, leading to at least two infant deaths. These risks render the Products unsafe and unsuitable for consumer use as marketed by Abbott.

110. Abbott had exclusive knowledge of material facts concerning the defective nature of the Products, including that they were likely to suffer from an unreasonable and inherent risk of contamination as a result of being produced at the Sturgis Facility, and that the Products themselves had a propensity to cause infant illnesses posing a serious risk of infant death.

111. Abbott's representations and omissions were material because they concern a serious health risk and were likely to deceive reasonable consumers.

112. Abbott intended to mislead Plaintiff and Kentucky Class members and induce them to rely on its misrepresentations and omissions.

113. Plaintiff and Kentucky Class members purchased goods or services for personal,

family, or household purposes and suffered ascertainable losses of money or property and sustained personal injuries as a result of Abbott's unlawful acts and practices.

114.    Abbott's unlawful acts and practices by were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Kentucky Class members that Plaintiff and Kentucky Class members could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

115.    Abbott acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded Plaintiff and Kentucky Class members' rights.

116.    As a direct and proximate result of Abbott's unlawful acts and practices, Plaintiff and Kentucky Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Abbott as they would not have paid Abbott for goods and services or would have paid less for such goods and services but for Abbott's violations alleged herein; the purchase price of the Products and damage related to personal injuries sustained.

117.    Plaintiff and Kentucky Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
**Violations of State Consumer Protection Statutes**
***(On Behalf of Plaintiff and the Multi-State Class)***

221.    Plaintiff brings this count on behalf of herself and the Multi-State Class and incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein. This Cause of action is alleged in the alternative to Count IV above.

222.    Plaintiff and Class members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above in paragraph 56 and footnote 36, which also provide a basis for redress to Plaintiff and Class members based on Defendant's

fraudulent, deceptive, unfair and unconscionable acts, practices and conduct described herein.

223.    Abbott repeatedly represented to the Multi-State Class through that the Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies, when in reality the Products are not safe for use as described. The Products are defective because they suffer from an unreasonable and inherent risk of being contaminated with harmful bacteria, including Cronobacter and/or Salmonella and have caused life-threatening illnesses in infants, leading to at least two infant deaths. These risks render the Products unsafe and unsuitable for consumer use as marketed by Abbott.

224.    Abbott had exclusive knowledge of material facts concerning the defective nature of the Products, including that they were likely to suffer from an unreasonable and inherent risk of contamination as a result of being produced at the Sturgis Facility, and that the Products themselves had a propensity to cause infant illnesses posing a serious risk of infant death.

225.    Defendant's misrepresentations were material to Plaintiff's and Class members' decision to purchase the Products or pay a premium for the Products.

226.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and knowingly or with reckless disregard for the truth.

227.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members were injured at the point of purchase.

228.    As a result of Defendant's violations, Defendant has been unjustly enriched.

229.    Pursuant to the aforementioned states' consumer protection laws, Plaintiff and Multi-State Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of a class of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class representative and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates common law and the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Classes and Subclasses their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 4, 2022

*s/Russell Busch*

Russell Busch
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
979 Green Bay Rd
Highland Park, IL 60035
Tel: (865) 247-0080
Fax: (865) 522-0049
rbusch@milberg.com

*Attorneys for the Plaintiff
and the Proposed Class*